UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
YASHUA PLAIR,

                              Plaintiff,

       -against-

CITY OF NEW YORK; Commissioner DORA B.
SCHIRRO; Chief of Department LARRY W.
DAVIS, SR.; Deputy Commissioner FLORENCE
FINKLE; Supervising Warden of Division II
ARTHUR OLIVARI; Warden EMMANUEL
BAILEY; Officer PEREZ; JOHN DOES # 1-20,

                              Defendants.
------------------------------------------------------------------------x

**10 CV 8177 (RWS)**

**MEMORANDUM OF LAW OF DEFENDANTS CITY OF NEW YORK, DORA B. SCHIRRO, LARRY W. DAVIS, SR., FLORENCE FINKLE, ARTHUR OLIVARI AND EMMANUEL BAILEY IN SUPPORT OF THEIR MOTION TO DISMISS**

       Defendants City of New York (the "City"), Dora B. Schirro, Larry W. Davis, Sr., Florence Finkle, Arthur Olivari and Emmanuel Bailey submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

**PRELIMINARY STATEMENT**

       Plaintiff Yashua Plair brings this action pursuant to 42 U.S.C § 1983 alleging that Defendants City of New York, Dora B. Schirro, Larry W. Davis, Sr., Florence Finkle, Arthur Olivari and Emmanuel Bailey violated his civil rights in an incident that took place on September 8, 2010, while Plaintiff was a pre-trial detainee on Riker's Island in the custody of the New York City Department of Correction ("DOC"). Plaintiff also makes various claims under New York State law arising from the same conduct underlying the federal claims.

---

[1] Upon information and belief, the defendant identified as "Officer Perez" has not been served with process and is therefore not a party to this action as of the date hereof.

Plaintiff's § 1983 claims against the individual defendants, Dora B. Schirro, Larry W. Davis, Sr., Florence Finkle, Arthur Olivari and Emmanuel Bailey (collectively, the "Supervisory Defendants"), must be dismissed because the Complaint contains no allegations or facts indicating that they were personally involved in the incident that caused Plaintiff's deprivations of civil rights.  As made clear by the recent Supreme Court in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009), a supervisor's "personal participation in wrongdoing" is the sole basis for § 1983 liability.  Accordingly, having failed to allege any personal participation on the part of the Supervisory Defendants, the federal claims against these defendants must be dismissed.  To the extent there are any surviving state law claims against the Supervisory Defendants, they too must be dismissed under Section 24 of New York Correction Law, which provides that "[n]o civil action shall be brought in any court of the state . . . against any Officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment. . ." (N.Y. Corr. Law § 24).  Accordingly, the Court should dismiss all federal and state law claims against the Supervisory Defendants.

Plaintiff's § 1983 claims for municipal liability against the City under Monell v. Department of Social Servs., 436 U.S. 658 (1978) must also be dismissed.   Plaintiff has pled no facts to support his threadbare recitations of the elements of such a claim and therefore has failed to satisfy the "flexible plausibility" pleading standard as set forth by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Accordingly, Plaintiff's § 1983 claims against the City must be dismissed.  In the absence of any of federal claims, and to the extent there are any surviving state law claims, the Court should decline supplemental jurisdiction over the state law claims.

**STATEMENT OF FACTS**

The following allegations of fact are derived from the Complaint:

On September 8, 2010, Plaintiff was a pre-trial detainee at Rikers Island and housed in an area known as "Mod 2 North" located at Robert N. Davoren Center ("RNDC").  (Complaint ("Compl.") ¶ 27.)  At approximately 8:30 p.m. on that day, Plaintiff got into a verbal argument with another inmate, causing a correction officer identified as "Perez" to summon the "probe team."  (Id. at ¶¶ 28-29.)  The probe team, consisting of approximately nine John Doe defendants, including a captain, arrived to the scene, as did another John Doe captain believed to be the supervising captain of Mod 2 North. (Id. at ¶¶ 30-33.)  Plaintiff was handcuffed and removed to a hallway, whereupon he was surrounded by the John Doe defendants of the probe team, the John Doe supervising captain and Officer Perez.  (Id. at ¶¶ 33-34.)  One of John Doe captains asked Officer Perez what happened, and Officer Perez replied that Plaintiff had a fight with another inmate.  (Id. at ¶¶ 35-36.)  As Plaintiff was being led away, he said "that is not how it happened," whereupon one of the John Doe captains told Plaintiff to "shut the fuck up" and then punched him three times in face causing fractures to his left and right jaw.  (Id. at ¶¶ 38-40.)  Plaintiff was thereafter placed in a holding cell where he remained for the next 19 hours without being given any medical care, despite Plaintiff's requests for same.  (Id. at ¶¶ 42-46.)  Plaintiff was not taken to the infirmary until about 3:30 p.m. on September 9, 2010.  (Id. at ¶ 47.)   Thereafter, Plaintiff was taken to Bellevue Hospital where he underwent surgery on his jaw.  (Id. at ¶¶ 50-51.)  Plaintiff was scheduled to be released on September 20, 2010 but he had to be detained for an additional eight days because of the assault.

Plaintiff filed his Complaint on October 28, 2010 setting forth seven claims for relief based on the incident described above: The First Claim for Relief (Compl. ¶¶ 61-65) asserts § 1983 claims against all the individual defendants for "gratuitous and excessive force and unlawful seizure and detention."  (Id. at ¶ 62.)  With respect to the Supervisory Defendants named herein (Dora B. Schirro, Larry W. Davis, Sr., Florence Finkle, Arthur Olivari and Emmanuel Bailey), Plaintiff

alleges, in sum and substance, that they knew that there was a pattern of physical abuse against inmates in the City jails prior to this incident but failed to "take measures to curb this pattern . . ." resulting in an "acquiescence in the known unlawful behavior of their subordinates." (Id. at ¶ 64.)   The Second Claim for Relief (¶¶ 66-69) asserts § 1983 liability against the City alleging that its "widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice or custom that led to Plaintiff's assault."  (Id. at ¶ 67.)   The Third, Fourth, Fifth and Sixth Claims for Relief asserts claims under state common law against all defendants respectively for: assault and battery; false imprisonment; intentional infliction of emotional distress and negligent infliction of emotional distress.  The Seventh Claim for Relief asserts claims under state common law against the City for negligent hiring/training and retention of employment services.

## RULE 12(b)(6) STANDARD FOR DISMISSAL

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).  A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557; see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While Twombly does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible.") (internal quotation marks and alteration omitted).

The Supreme Court in Iqbal set forth a "two-pronged" approach for analyzing a motion to dismiss. Iqbal, 129 S. Ct. at 1950.  First, a court must accept a plaintiff's factual

allegations as true and draw all reasonable inferences from those allegations in plaintiff's favor. Id. at 1949-50.  Pleadings that are conclusory "are not entitled to the assumption of truth." Id. at 1950.  Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  Thus, "where the well-pleaded facts do not permit the court to infer more that the mere possibility of misconduct," the complaint has failed to demonstrate that the pleader is entitled to relief.  Id, at 1937 (citing Rule 8(a)(2)).  In making its evaluation, a court must undertake a "context-specific task" that requires it to draw on its judicial experience and common sense.  Id.

In light of the "facial plausibility" standard, Plaintiff's pleading is insufficient to state a claim for relief and should be dismissed as to defendants City of New York and the supervisory defendants.  Plaintiff has pled no facts that give rise to a plausible inference that his rights were violated by any of these defendants in keeping with the "facial plausibility" pleading standard set forth in Iqbal.  Where, as here, the facts as pled do not permit the Court to infer more than a mere possibility of misconduct, the complaint has failed to demonstrate that Plaintiff is entitled to relief.  Iqbal, 129 S. Ct. at 1937 (citing Rule 8(a)(2)).  Accordingly, the pleading is legally insufficient and should be dismissed as to these defendants.

POINT I

**PLAINTIFF HAS FAILED TO STATE A CLAIM FOR SUPERVISORY LIABILITY AGAINST THE INDIVIDUAL DEFENDANTS**

Plaintiff does not allege that any of the Supervisory Defendants (Dora B. Schirro, Larry W. Davis, Sr., Florence Finkle, Arthur Olivari and Emmanuel Bailey) were involved in the September 8, 2010 incident underlying the Complaint.  In fact, plaintiff identifies the individuals involved in his alleged assault as the John Doe members of the probe team, the John Doe captain of the probe team, the John Doe captain of Mod 2 North and Officer Perez. (Compl. ¶¶ 29-34.)   This being the case, the only basis for Plaintiff's § 1983 claims against these defendants is his allegation that they "knew that the pattern of physical abuse described above existed in the City jails prior to and including the time of the assault on plaintiff[,]"but failed to "take measures curb this pattern . . ." resulting in an "*acquiescence* in the known unlawful behavior of their subordinates." (Id. at ¶ 64; emphasis added.)

Plaintiff's claims against the Supervisory Defendants must be dismissed on the basis of the Supreme Court's ruling in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) wherein the Court held that claims premised on a supervisor's "knowledge and acquiescence" in subordinates' wrongdoing is insufficient to state a claim. Id. 1949.  The plaintiff/respondent[2] in Iqbal brought a civil rights action against several high-ranking federal officials, including John Ashcroft (the former Attorney General of the United States) and Robert Mueller (the Director of the Federal Bureau of Investigation (FBI)), alleging that after the September 11 attacks, the FBI "arrested and detained thousands of Arab and Muslim men" substantially on the basis of their race, religion, or national origin, and that as a result the plaintiff was unlawfully confined and subjected to harsh treatment. 129 S. Ct. at 1951.  Plaintiff argued that "under a theory of "supervisory liability," the Attorney General and FBI Director could be held liable for their "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make

---

[2] Plaintiff/respondent Iqbal was a Muslim man who was arrested and detained in the wake of September 11th terrorist attack in New York City.

classification decisions among detainees." Id.  The Supreme Court, however, specifically dismissed this argument holding that "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.  Id.  The Court went on to hold that for plaintiff to "prevail on that theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post-September-11 detainees as "of high interest" because of their race, religion, or national origin."  Id. at 1952.  Having failed in this respect, the Supreme Court, however, held that the complaint failed to state a claim for intentional discrimination with respect to the Attorney General or the FBI Director.

Following Iqbal,[3] most courts in this district have held that a defendant cannot be held liable under section 1983 unless that defendant took an action that deprived the plaintiff of his or her constitutional rights. See, e.g., Joseph v. Fischer, 2009 U.S. Dist. LEXIS 96952, at *42-43 (S.D.N.Y. Oct. 8, 2009) ("[p]laintiff's claim, based on [a supervisor's] failure to take corrective measures, is precisely the type of claim Iqbal eliminated."); Bellamy v. Mount Vernon Hosp., 2009 U.S. Dist. LEXIS 54141, at *27-28 (S.D.N.Y. June 26, 2009) (holding that Iqbal eliminated supervisory liability, previously permitted by Colon, in situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate); Newton v. City of New York, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("passive failure to train claims pursuant to §1983 have not survived the Supreme Court's recent decision in [Iqbal]").

---

[3] Prior to Iqbal, the controlling authority on supervisory liability was Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), which held that liability may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d at 873.

There have been decisions in this district, however, that have held that the "five Colon categories for personal liability of supervisors may still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated." D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010); see also Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("It was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.' Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis  set forth in Colon v. Coughlin may still apply.") (citation omitted)).

Here, Plaintiff's claims against the Supervisory Defendants fails under either standard of review.  As in Iqbal, plaintiff in this case is attempting to impose liability on the Supervisory Defendants based solely on their alleged "knowledge and acquiescence" of the so-called "pattern of physical abuse" in the City jails.  (Compl. ¶ 64.)  Under the Fischer, Bellamy and Newton  line of cases, such a claim fails at the outset because Iqbal abrogated supervisory liability based on a supervisor's failure to act.  See, e.g., Fischer, 2009 U.S. Dist. LEXIS 96952, at *42-43 (S.D.N.Y. Oct. 8, 2009) ("Thus, under Iqbal, a defendant can be liable under section 1983 only if that defendant took an action that deprived the plaintiff of his or her constitutional rights.")  Under the D'Olimpio and Sash analysis, plaintiff's claim also fails because he has not presented any facts to support his claim that there was a "pattern of physical abuse," that the Supervisory Defendants knew of this pattern of abuse and acquiesced to it, and that their acquiescence caused the resulting injury to Plaintiff.  Nor do the facts alleged by Plaintiff

concerning the underlying incident indicate that the alleged was caused by an unconstitutional policy or practice.  In sum and substance, Plaintiff alleges that an unidentified captain punched him after plaintiff disputed Officer Perez's assertion that he got into a fight.  Such facts, even if true, are indicative of a personal reaction on the part of the captain to an unanticipated situation, not an unconstitutional policy or practice.  Further, there are no allegations or facts indicating that the captain engaged in similar behavior on previous occasions or that the Supervising Defendants were of these past acts, as was the case in D'Olimpio.[4]  What remains, then, are conclusory allegations, which fail to establish liability even under the broader Colon approach.  See Bellezza v. Holland, 2010 U.S. Dist. LEXIS 100664 at * 14-15 (S.D.N.Y. July 27, 2010) (Sweet, J.) ("conclusory allegations [against supervisory defendant] do not constitute personal involvement and are therefore insufficient to bring a § 1983 claim.").  Accordingly, Plaintiff's claims against the Supervisory Defendants should be dismissed.

### POINT II

### PLAINTIFF'S STATE LAW CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL AS A MATTER OF LAW

The Complaint states various state law claims against all defendants including the named Supervisory Defendants.  In addressing supplemental jurisdiction claims, a federal court looks to the substantive law of the state. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966).  New York law bars lawsuits against prison employees in their personal capacity for damages arising out of "any act done or the failure to perform any act within the

---

[4] In D'Olimpio, the Court found plaintiff stated a claim for supervisory liability based on an investigative report incorporated in the complaint, which found that one of the defendants had committed past wrongful acts and that there was a "lack of appropriate supervision" by defendant's supervisors, who were also named as defendants. D'Olimpio, 718 F. Supp. 2d at 347.

scope of the employment and in the discharge of duties by such officer or employee." New York Corr. Law § 24. See Baker v. Coughlin, 77 F.3d 12, 13-14 (2d Cir. 1996) (holding that even though § 24 only refers to actions in state court, it applies to state claims brought in federal court). Plaintiff is also barred from suing officials under New York law in their official capacities. The Eleventh Amendment precludes states from being sued unless they waive immunity, which has not occurred here. See Welch v. Texas Dept. of Highways and Public Transp., 483 U.S. 468, 472, 107 S. Ct. 2941 (1987). Accordingly, plaintiff's state law claims against all the individual defendants must be dismissed as a matter of law.[5]

## POINT III

### PLAINTIFF HAS FAILED TO STATE A MONELL CLAIM AGAINST THE CITY OF NEW YORK

To prevail on a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 - 91 (1978). A municipality may not be held liable under §1983 on the basis of *respondeat superior*. Monell, 436 U.S. at 694 - 95. Rather, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . Second, the plaintiff must establish a casual connection - - an "affirmative link: - - between the policy and deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985)). Therefore, in order to establish municipal liability, plaintiff must establish that an

---

[5] Plaintiff has indicated an intention to amend the Complaint to name the John Doe defendants identified in the Complaint. This being the case, should the Court rule in Defendants' favor on this issue, the holding should apply to the John Doe defendants as well.

identified municipal policy or practice was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694.  Assuming plaintiff satisfies this initial burden, he must also establish an affirmative link between this "policy" and their specific constitutional deprivations. Vippolis, 768 F.2d at 44.

As to the issue of what a complaint must allege to survive a Motion to Dismiss, the Second Circuit has held that "'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993), overruled on other grounds; see also Brodeur v. City of New York, 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500, at *7 (S.D.N.Y. Mar. 18, 2002) (court dismissing complaint against City where complaint "flatly asserts a policy but contains no factual allegations sufficient to establish a municipal policy or custom"); George v. Burton, 00 Civ. 143 (NRB), 2001 U.S. Dist. LEXIS 24, at *5 – *6 (S.D.N.Y. Jan. 4, 2001) (court dismissing complaint with prejudice where plaintiff "failed to proffer any facts in his complaint from which we can infer such a pattern or practice").  As recently stated by one court:

> It is questionable whether the boilerplate Monell claim often included in many § 1983 cases, including this one, was ever sufficient to state a claim upon which relief could be granted. See Smith v. City of New York, 290 F. Supp. 2d 317, 322 (E.D.N.Y. 2003) (holding that a conclusory, boilerplate assertion of a municipal policy or custom was insufficient to survive motion to dismiss).  In light of Ashcroft v. Iqbal, U.S., 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007), it is now clear that such boilerplate claims do not rise to the level of plausibility. The Monell claim is therefore dismissed.

Santiago v. City of New York, 2009 U.S. Dist. LEXIS 75372 (E.D.N.Y. Aug. 18, 2009)

Here, plaintiff's complaint is devoid of any factual details concerning Monell liability and merely contains boilerplate allegations of unconstitutional policies and practices.

(See Compl. ¶¶ 67 – 68.)   Specifically, plaintiff baldly alleges that the City "permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of plaintiff's beatings [which] constituted a municipal policy, practice or custom and led to plaintiff's assault."   Based on the foregoing, the Court should dismiss plaintiff's § 1983 claims against the City as a matter of law.

### POINT IV

### PLAINTIFF'S STATE LAW CLAIMS AGAINST THE CITY FOR NEGLIGENT HIRING, NEGLIGENT SUPERVISION AND NEGLIGENT RETENTION FAIL AS A MATTER OF LAW

A claim for negligent hiring, retention or supervision can only proceed against an employer for an employee acting outside the scope of her employment.  Murns v. City of New York, 00 Civ. 9590 (DLC), 2001 U.S. Dist. LEXIS 6287, at *16 - 17 (S.D.N.Y. May 15, 2001) (collecting cases); Saghezi v. Reno, 94 Civ. 8291 (HB), 1996 U.S. Dist. LEXIS 13447, at *24 - 25 (S.D.N.Y. Sept. 12, 1996) (dismissing plaintiff's state law claim for negligent supervision "because New York law does not give rise to a cause of action for negligent supervision"). There is no dispute here that the defendants were acting within the scope of their employment. (Compl. ¶¶ 11-18.)   Accordingly, "no claim may proceed against the employer for negligent hiring or retention." Karoon v. New York City Transit Auth., 659 N.Y.S.2d 27, 29  (1st Dep't 1997).

The Court should therefore dismiss plaintiff's Seventh Claim for Relief based on negligent hiring, training, supervision or retention and intentional infliction of emotional distress. To the extent that there any remaining state law claims against the City, the Court should decline to exercise jurisdiction over such claims. See Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994)

(affirming lower court holding "that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims.").

## CONCLUSION

For the foregoing reasons, Defendants City of New York, Dora B. Schirro, Larry W. Davis, Sr., Florence Finkle, Arthur Olivari and Emmanuel Bailey respectfully request that the Court dismiss the complaint as against them, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 29, 2010

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York, Attorney for the City of New of
New York, Dora B. Schirro, Larry W. Davis, Sr.,
Florence Finkle, Arthur Olivari and Emmanuel Bailey
100 Church Street, Room 3-159
New York, New York 10007
(212) 788-8698

By: _____
Steve Stavridis
Assistant Corporation Counsel

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

RULE 12(b)(6) STANDARD FOR DISMISSAL ........................................................................ 4

    POINT I

        PLAINTIFF HAS FAILED TO STATE A CLAIMS FOR
        SUPERVISORY LIABILTY AGAINST THE
        INDIVIDUAL DEFENDANTS ................................................................. 5

    POINT II

        PLAINTIFF'S STATE LAW CLAIM AGAINST THE
        INDIVIDUAL DEFENDANTS FAIL AS A MATTER OF
        LAW ........................................................................................................... 9

    POINT III

        PLAINTIFF HAS FAILED TO STATE A MONELL
        CLAIM AGAINST THE CITY OF NEW YORK .................................... 10

    POINT IV

        PLAINTIFF'S STATE LAW CLAIMS against the city
        FOR NEGLIGENT HIRING, NEGLIGENT
        SUPERVISION AND NEGLIGENT RETENTION FAIL
        AS A MATTER OF LAW ....................................................................... 12

CONCLUSION ............................................................................................................................ 13