10 CV 8177 (RWS)(HBP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YASHUA PLAIR,

                                                        Plaintiff,

                        - against -

CITY OF NEW YORK; Commissioner DORA B.
SCHRIRO; Chief of Department LARRY W.
DAVIS, SR.; Deputy Commissioner FLORENCE
FINKLE; Supervising Warden of Division II
ARTHUR OLIVARI; Warden EMMANUEL
BAILEY; Officer PEREZ; JOHN DOES # 1-20,

                                                        Defendants.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)

HARVIS & SALEEM LLP
*Attorneys for Plaintiff Yashua Plair*
305 Broadway, 14th Floor
New York, N.Y. 10007

By: Gabriel P. Harvis
Tel:  (212) 323-6880

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................1

PROCEDURAL HISTORY ........................................................................2

STATEMENT OF FACTS ...........................................................................3

STANDARD FOR DISMISSAL .................................................................7

ARGUMENT

    POINT I

           PLAINTIFF STATES A CLAIM AGAINST DEFENDANT CITY OF NEW YORK PURSUANT TO <u>MONELL</u> AND ITS PROGENY .....................9

           A. The Pleading Requirement for a <u>Monell</u> Claim is Plausibility ........................................................................9

           B. Plainitff States a <u>Monell</u> Claim Under Both <u>Dwares</u> and <u>Leatherman</u> ............................................11

    POINT II

           PLAINTIFF STATES A CLAIM AGAINST THE SUPERVISORY DEFENDANTS ....................................14

           A. <u>Colon</u> Remains the Standard for Establishing Personal Involvement by Supervisory Officials Under 28 U.S.C. § 1983 ...........................................14

           B. Plainitff States a Claim Against the Supervisory Defendants Under Both <u>Colon</u> and <u>Bellamy</u> ...........................17

           C. Discovery May Reveal Direct Personal Involvement by the Supervisory Defendants ...........................18

**Page**

POINT III

                ALL OF PLAINTIFF'S STATE LAW CLAIMS
ARE VIABLE AND THE COURT SHOULD
EXERCISE SUPPLEMENTAL JURISDICTION
OVER THEM.................................................................................19

        A. Section 24 of the New York Correctional Law
Does Not Bar Plaintiff's Claims ...................................................20

        B. Eleventh Amendment Immunity is Inapplicable
to Municipal Officials ...................................................................21

        C. Plaintiff's Negligent Hiring, Training and
Retention Claims Should Not Be Dismissed...........................21

        D. The Court Should Exercise Supplemental
Jurisdiction Over Plaintiff's State Law Claims..........................23

CONCLUSION ...........................................................................................25

Plaintiff Yashua Plair ("Plaintiff" or "Mr. Plair"), by his attorneys, Harvis & Saleem LLP, respectfully submits this Memorandum of Law in opposition to Defendants City of New York, Dora B. Schriro, Larry W. Davis, Sr., Florence Finkle, Arthur Olivari and Emmanuel Bailey's Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

On September 8, 2010, Plaintiff, a pre-trial detainee on Rikers Island, was handcuffed, led to a hallway outside of his dormitory and surrounded by approximately a dozen correction officers of varying rank. Without warning, an unidentified captain punched Plaintiff three times in his head. The first punch fractured Plaintiff's right mandible. The second punch fractured his left mandible. The third punch landed squarely on the top of Plaintiff's head. Plaintiff was spitting up blood and it was obvious to both him and his assailants that he had been seriously injured. Plaintiff was led to a cell in the intake area of the facility and locked inside for nineteen hours without receiving any medical care. As a direct result of the assault, Plaintiff's incarceration was extended for over a week.

In addition to federal and state law claims against the as yet unidentified individuals who actually assaulted Plaintiff, failed to intervene in the assault and withheld medical treatment, Plaintiff alleges, pursuant to Monell v. Department of Social Servs., 436 U.S. 658 (1978), that the assault and denial of medical care resulted from a widespread pattern and practice of staff brutality and retaliation by New York

City Department of Correction ("DOC") staff, which the City of New York ("City") knowingly tolerated with deliberate indifference to the obvious consequences. As senior officials directly responsible for creating and promulgating agency policy, regulating the conduct of uniformed staff in the jails and ensuring inmate safety, Plaintiff alleges that Defendants Dora B. Schriro, Larry W. Davis, Sr., Florence Finkle, Arthur Olivari and Emmanuel Bailey ("Supervisory Defendants") are liable for, inter alia, allowing the continuance of a policy or custom under which the unconstitutional practice of excessive force by DOC staff occurred.[1]

Defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) Plaintiff fails to state a claim against the Supervisory Defendants; (2) Plaintiff's state law claims against the Supervisory Defendants fail as a matter of law; (3) Plaintiff fails to state a claim against the City under Monell and its progeny; and (4) Plaintiff's state law claims for negligent hiring, supervision and retention fail as a matter of law. Plaintiff opposes Defendants' motion on each ground as set forth herein.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on October 28, 2010, in the Southern District of New York, against the City, DOC Commissioner Dora B. Schriro, DOC

---

[1] As discussed infra at Point II(C), the fact that Plaintiff spent nineteen hours locked in a cell with severe injuries raises the possibility of direct personal involvement by the Supervisory Defendants. To the extent that these Defendants became aware of Plaintiff's condition and failed to act, such conduct could amount to 14th Amendment deliberate indifference. See City of Revere v. Massachusetts Gen. Hospital, 463 U.S. 239 (1983). Plaintiff intends to explore this possibility in discovery.

Chief of Department Larry W. Davis, Sr., DOC Deputy Commissioner Florence Finkle, DOC Supervising Warden of Division II Arthur Olivari, DOC Warden Emmanuel Bailey, DOC Officer Perez and twenty unidentified individuals.[2] (See Complaint dated October 28, 2010, annexed to the Declaration of Steve Stavridis, dated December 29, 2010 (hereinafter "Stavridis Decl.") as Exhibit A). By Notice of Motion dated December 29, 2010, the City and the Supervisory Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff now opposes Defendants' motion.

## STATEMENT OF FACTS

In the Complaint, see Exhibit A, Plaintiff alleges, inter alia, the following facts: By virtue of internal reports and civil litigation, including cases such as Sheppard v. Phoenix, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) and Ingles v. Toro, 438 F. Supp. 2d 203 (S.D.N.Y. 2006), DOC has been aware for decades that its staff routinely uses unconstitutional excessive force. Stavridis Decl., Exh. A, ¶¶ 19-21. DOC's reporting system for excessive force allegations ensured that the Supervisory Defendants were well aware of the pattern of excessive force, its use for punishment and injury rather than restraint, and the failure and unwillingness of DOC to take sufficient remedial, disciplinary or investigative action. Stavridis Decl., Exh. A, ¶¶ 22-26. The assault of Yashua Plair was a part of this pattern and a result of it. Stavridis Decl., Exh. A, ¶ 67.

---

[2] Plaintiff has requested but has not yet been provided with information necessary to identify and serve Perez and the John Doe Defendants.

On September 8, 2010, at approximately 8:30 p.m., Plaintiff Yashua Plair, a pre-trial detainee at the Robert N. Davoren Center adolescent jail on Rikers Island ("RNDC"), had a verbal disagreement with another inmate in his housing area. Stavridis Decl., Exh. A, ¶¶ 27-28.   Defendant Perez sounded an alarm and a team consisting of approximately 8 armed DOC officers and 2 captains arrived, handcuffed Mr. Plair and brought him to a hallway.   Stavridis Decl., Exh. A, ¶¶ 29-33.   The officers surrounded Mr. Plair and, when Mr. Plair objected to a false account by Defendant Perez of the events preceding the alarm, an unidentified captain punched Mr. Plair three times, resulting in fractures to both sides of his jaw and excruciating pain.   Stavridis Decl., Exh. A, ¶¶ 34-40.   After informing his assailants of the self-evident fact that his jaw was broken, Mr. Plair was taken to a cell in RNDC's intake area and locked inside; his desperate pleas for pain relievers and medical care, made both as he was placed in the cell and continuously for the next nineteen hours, were ignored.   Stavridis Decl., Exh. A, ¶¶ 41-46.   During those nineteen hours, Mr. Plair specifically asked eight or more unidentified DOC staff in the intake area for medical treatment.   Stavridis Decl., Exh. A, ¶ 46.

At approximately 3:30 p.m. on the following day, Mr. Plair was taken to the Rikers Island onsite clinic, where he was administered Tylenol and x-rayed. Stavridis Decl., Exh. A, ¶ 47.   Mr. Plair was then transported to the Bellevue Hospital Prison Ward in a DOC bus.   Stavridis Decl., Exh. A, ¶ 48.   After undergoing surgery and spending six days at the hospital, Mr. Plair was returned to Rikers Island and held

at the NIC infirmary jail for ten days before being released.  Stavridis Decl., Exh. A, ¶¶ 51-52.  As a result of the assault, DOC detained Mr. Plair for at least eight days beyond his scheduled release date.  Stavridis Decl., Exh. A, ¶ 52.

In addition to the facts set forth in the Complaint, Plaintiff respectfully requests, pursuant to Rule 201 of the Federal Rules of Evidence, that the Court take judicial notice of the following facts contained in public court records and/or newspaper articles relevant to Plaintiff's claims:[3]

(1)   "In the first 10 months of 2008, 39 inmates at RNDC suffered serious facial injuries—broken noses, broken jaws, or fractured eye sockets, records show. Twenty-eight of those inmates were teenagers."  (See Graham Rayman, *Rikers Fight Club: The Knockout Punch*, VILLAGE VOICE, April 15, 2009, annexed to the Declaration of Gabriel P. Harvis, dated January 12, 2011 (hereinafter "Harvis Decl.") as Exh. 1).

(2)   In February 2008, RNDC Correction Officer Lloyd Nicholson was arrested and subsequently indicted on charges that "he had ordered six inmates to beat two others in 2007 as part of a rogue disciplinary system that he and other guards called 'The Program.'"  On August 6, 2010, a Bronx County Supreme Court Judge sentenced Mr. Nicholson to six years in prison and five years of post-release probation, noting at that time that he had found Mr. Nicholson's testimony "'unbelievable and contrived.'"  (See Isolde Raftery, *6-Year Sentence for Guard in Rikers Island Beatings*, N.Y. TIMES, August 7, 2010, annexed to Harvis Decl. as Exhibit 2).

(3)   On October 17, 2008, RNDC inmate Christopher Robinson was beaten to death by three other inmates, allegedly with the facilitation of RNDC staff.  Mr. Robinson was murdered in his cell and "there are only two ways in which Robinson's attackers

---

[3] Plaintiff intends to file an amended complaint including these facts once the John Doe Defendants are identified.  Each of these facts relate specifically to RNDC, the adolescent jail on Rikers Island where the assault of Plaintiff occurred.

could have entered his cell without his consent: Either the guards opened the door on purpose, or they left it open long after it should have been closed. The location of guards during the assault remains unclear." Following the assault and prior to his death, Mr. Robinson was denied medical treatment for as long as twelve hours. (See Graham Rayman, *Teen Murder at Rikers Jail*, VILLAGE VOICE, Nov. 19, 2008, annexed to Harvis Decl. as Exh. 3).

(4)     In January 2009, three RNDC correction officers were indicted by the Bronx County District Attorney's Office. The officers were alleged to have "recruited inmates over three months [in 2008] to serve as 'managers, foot soldiers and enforcers' to maintain order [at RNDC]. The guards were also accused of training the inmates in how to restrain and assault their victims and deciding where and when attacks would occur." (See Benjamin Weiser, *Lawsuits Suggest Pattern of Rikers Guards Looking Other Way*, N.Y. TIMES, Feb. 4, 2009, annexed to Harvis Decl. as Exh. 4).

(5)     Two of the officers, Michael McKie and Khalid Nelson, are accused by prosecutors of having "[run] [RNDC] like an organized crime family" and face 25 years in prison on enterprise corruption charges. The third officer, Denise Albright, has been charged with, under alia, assault and conspiracy. Exh. 4.

(6)     "Just one month prior to Robinson's murder, an 18-year-old inmate named Alicedes Polance suffered a broken eye socket in a beating by a 'team' of inmates [at RNDC] while [McKie, Nelson and Albright] were on duty, records show. In the aftermath, however, DOC officials failed to uncover the alleged scheme in time to prevent the fatal Robinson assault." Exh. 1.

(7)     From October 2007 to October 2008, DOC's Chief of Department and Chief of Facilities Operations were receiving, but failing to act upon, regular reports concerning "gang violence and extortion – some of it encouraged by correction officers" at RNDC. Exh. 1.

(8)     Despite repeated mention at weekly staff meetings of a "disturbing trend" of violence at RNDC during that period, then-Chief of Facilities Operations Patrick Walsh 'treated each incident as isolated and failed to act on the overall problem.'" Exh. 1.

6

(9)     A senior DOC official described the strategy enacted to combat violence at RNDC as a "'Band-Aid approach'" and stated that DOC leadership would "'deal with the incident, but not see the big picture: that it was widespread throughout [RNDC].'" Senior DOC officials "needed to break that culture and make this kind of thing unacceptable, but no one put it together. It's all on management and a lack of leadership.'" Exh. 1.

## STANDARD FOR DISMISSAL

In the context of a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); accord, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006). In assessing a Rule 12(b)(6) motion, the court must assume the truth of the well-pled factual allegations of the Complaint and must draw all reasonable inferences against the movant. See, e.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996).

The traditional test on a Rule 12(b)(6) motion required that the Complaint not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Still, 101 F.3d at 891 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Supreme Court has revisited the test, however, and a Complaint is now subject to dismissal unless its factual allegations, if credited, make the claim "plausible." See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombley, 550 U.S. 544, 556, 560-61 (2007). The court thus must look first to the well-pled factual allegations,

determine whether they are plausible, and then determine whether those plausible allegations, if proven, suffice to establish liability.  See, e.g., Iqbal, 129 S.Ct. at 1949-50.  Twombly does not impose "a universal standard of heightened fact pleading, but … instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (emphasis in original).  In short, the pleading must "'raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombley, 550 U.S. at 555).

In deciding a motion to dismiss, a court should consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."  Vasquez v. City of New York, 99 Civ. 4606 (DC), 2000 U.S. Dist LEXIS 8887, at *3 (S.D.N.Y. June 29, 2000) (citations omitted); see also, Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

For the reasons set forth below, Plaintiff respectfully submits that, upon consideration of the record before the Court, Defendants' motion to dismiss the Complaint must be denied in its entirety.

## ARGUMENT

## POINT I

## PLAINTIFF STATES A CLAIM AGAINST DEFENDANT CITY OF NEW YORK PURSUANT TO <u>MONELL</u> AND ITS <u>PROGENY</u>

The detailed factual allegations in Plaintiff's Complaint, along with the publicly available information detailed <u>supra</u>, are more than sufficient to satisfy the pleading requirements for a <u>Monell</u> claim against the City, and the City's arguments to the contrary are unavailing.

### A.   The Pleading Requirement for a <u>Monell</u> Claim is Plausibility.

"The Supreme Court has made clear that there is no heightened pleading standard for <u>Monell</u> claims." <u>Kimbrough v. Town of Dewitt Police Dept.</u>, 08-CV-03 (GLS), 2010 WL 3724121, 11 (N.D.N.Y. March 8, 2010) (internal citations omitted); <u>see also</u> <u>Rheingold v. Harrison Town Police Dept.</u>, 568 F.Supp.2d 384, 394 (S.D.N.Y. 2008). Indeed, "[a] plaintiff is not required to 'state or establish exactly' in his complaint the policy by which he alleges the defendants violated his rights, nor is he required to plead more than a single instance of misconduct." <u>Simpkins v. Bellevue Hosp.</u>, 832 F.Supp. 69, 73 (S.D.N.Y. 1993) (quoting <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163 (1993)).

Defendants base their argument for a heightened <u>Monell</u> pleading standard on the 1993 Second Circuit case of <u>Dwares v. City of New York</u>, 985 F.2d

94 (2d Cir. 1993), which held that <u>Monell</u> allegations must contain facts sufficient to permit "at least circumstantial[]" inference of an unlawful municipal custom or policy.[4]  <u>See</u> Defendants' Memorandum of Law in Support of their Motion to Dismiss dated December 29, 2010 ("Defs. Br.") at 11-12.   However, such reliance is misguided.  The Supreme Court's decision in <u>Leatherman</u> effectively overruled any additional pleading requirements for <u>Monell</u> claims that might have been imposed by <u>Dwares</u>.  <u>Javid v. Scott</u>, 913 F.Supp. 223, 230 (S.D.N.Y. 1996) ("[W]e believe that [the <u>Dwares</u> <u>Monell</u> pleading] standards are no longer appropriate, in light of" <u>Leatherman</u>.).

Several courts in this circuit "have interpreted <u>Leatherman</u> as adopting the Ninth Circuit rule that 'a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'"  <u>Smith v. City of New York</u>, 04-CV-3286 (TPG), 2010 WL 3397683, *17 (S.D.N.Y. August 27, 2010) (internal citations and quotations omitted) (collecting cases); <u>see also</u> <u>Colon-Rodriguez v. New York City Dept. of Correction</u>, 07-CV-8126 (GBD), 2009 WL 995181, *6 (S.D.N.Y. April 13, 2009) ("As the Supreme Court made plain in <u>Leatherman</u>, when a plaintiff seeks to plead

---

[4] <u>Brodeur v. City of New York</u>, also cited by Defendants for this proposition, relies on <u>Dwares</u>. <u>Brodeur v. City of New York</u>, 99-CV-651 (WHP), 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002). The portion of <u>George v. Burton</u> quoted by Defendants parenthetically is unsupported.  <u>George v. Burton</u>, 00-CV-143 (NRB), 2001 WL 12010, at *2 (S.D.N.Y. Jan. 4, 2001).

municipal liability under a <u>Monell</u> theory, he may simply identify the basic link of the constitutional tort to municipal responsibility…").

In a deliberate indifference prisoner case similar to the instant one, <u>Gashi v. County of Westchester</u>, the Honorable George B. Daniels approvingly examined, in the context of a 12(b)(6) motion, the sufficiency of <u>Monell</u> allegations that "[the plaintiff's] mistreatment by corrections staff was pursuant to the customs and practices of the Westchester County Jail – very close to an allegation that his mistreatment was pursuant to customs and practices of the County itself, which even standing alone would likely be sufficient to survive a motion to dismiss."  <u>Gashi v. County of Westchester</u>, 02-CV-6934 (GBD), 2005 WL 195517 (S.D.N.Y. Jan. 27, 2005) (citing <u>Tsotesi v. Bd. of Educ.</u>, 258 F.Supp.2d 336, 337-338 & n.10 (S.D.N.Y. 2003); <u>see also</u> <u>Wheat v. New York City Dept. of Correction</u>, 10-CV-5459 (SAS), 2010 WL 5129065 (S.D.N.Y. Dec. 15, 2010) (denying motion to dismiss <u>Monell</u> claim based on the denial of shoes to <u>pro se</u> inmate plaintiff).

Thus, to survive a motion to dismiss, Plaintiff's <u>Monell</u> allegations need only contain facts sufficient to render plausible the claim that his constitutional deprivation resulted from an unconstitutional municipal policy, practice or custom. <u>Monell</u>, 436 U.S. at 690 – 91; <u>Twombley</u>, 550 U.S. at 555.

**B.    Plaintiff States a <u>Monell</u> Claim Under Both <u>Dwares</u> and <u>Leatherman</u>.**

Plaintiff alleges, pursuant to <u>Monell</u>, that the City of New York has permitted, tolerated and was deliberately indifferent to a widespread pattern and

practice of brutality by DOC staff against inmates, leading to the inevitable development of a violent, lawless environment, and that such pattern and practice led to Plaintiff's unusually vicious assault and the nineteen-hour denial of medical treatment to him.  Stavridis Decl., Exh. A, ¶¶ 2, 10-15, 19-26, 67-69; Harvis Decl., Exhs. 1-4, generally.

Defendants' substantive argument against the sufficiency of Plaintiff's Monell allegations consists of one sentence.  See Defs. Br. at p. 11 ("[P]laintiff's complaint is devoid of any factual details concerning Monell liability and merely contains boilerplate allegations of unconstitutional policies and practices.").   In support of this argument, Defendants cite two paragraphs of Plaintiff's Complaint, making no mention of the fifteen additional paragraphs of detailed policy allegations contained in the pleading.  See Defs. Br., pp. 11-12; Stavrides Decl., Exh. A, ¶¶ 2, 10-15, 19-26, 67-69.   Far from mere boilerplate, Plaintiff's Complaint outlines with specificity the factual basis for his constitutional deprivation and injuries (¶¶ 19-57), the official policy or custom they resulted from (¶¶ 10-15) and a "causal link" between them (¶¶ 67-69).  See Oklahoma City v. Tuttle, 471 U.S. 808, 823-30 (1985).

In Turpin v. Mailet, the Second Circuit stated that a municipality could be liable under Plaintiff's theory, noting that:

> We see no reason why an official policy cannot be inferred from the omissions of a municipality's supervisory officials, as well as from its acts. The issue of authorization, approval or encouragement is generally one of fact, not law. For example, where senior personnel have knowledge of a

> pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts.

Turpin v. Mailet, 619 F.2d 196, 201 (2d Cir. 1980) (internal citations omitted).

Recently, in Searles v. Pomplino, the Honorable Paul G. Gardephe further explained how Plaintiff could base municipal liability on an unchecked, widespread pattern of misconduct such as that alleged in the Complaint:

> Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions. Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, may constitute a policy or custom within the meaning of Monell.

Searles v. Pomplino, 652 F. Supp. 2d 432, 442-43 (S.D.N.Y. 2009) (internal citations and quotations omitted).

Additionally, the court in Turpin held that municipal wrongdoing could be inferred from nothing more than a single act of egregious misconduct, such as the events surrounding Plaintiff's assault, stating:

> [A] single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or "gross negligence" on the part of officials in charge.

Turpin, 619 F.2d at 202 (internal citations omitted).

13

Plaintiff's Complaint contains detailed factual allegations linking Plaintiff's assault and denial of medical treatment to an unlawful policy or custom. Stavrides Decl., Exh. A, ¶¶ 2, 10-15, 19-26, 67-69; <u>Searles</u>, 652 F. Supp. 2d.  Even without such well-pleaded facts regarding the policy, the egregious nature of Plaintiff's assault, the severity of his injuries, and the unconscionable period of time he was locked in a cell without treatment would raise a sufficient inference of municipal misconduct to survive a motion to dismiss. <u>Turpin</u>, 619 F.2d at 202; <u>Achtman</u>, 464 F.3d at 337.

In light of the foregoing, Defendants' motion to dismiss Plaintiff's <u>Monell</u> claims against the City of New York should be denied.

## POINT II

### PLAINTIFF STATES A CLAIM AGAINST THE SUPERVISORY DEFENDANTS

Defendants contend that Plaintiff fails to state a claim against the Supervisory Defendants in light of the Supreme Court's decision in <u>Iqbal</u>.  <u>See</u> Defs. Br., pp. 6-9.  Defendants are incorrect and misstate the scope of <u>Iqbal</u>'s impact on supervisory claims under § 1983 and the current state of the law in this circuit.

**A.**   **<u>Colon</u> Remains the Standard for Establishing Personal Involvement by Supervisory Officials Under 28 U.S.C. § 1983.**

In the Second Circuit, in a claim brought under 28 U.S.C. § 1983, the personal involvement of supervisory officials may be established by evidence that:

14

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

The Supreme Court's decision in Iqbal did not alter this precedent. The claims in Iqbal involved, inter alia, denial of equal protection and discrimination – legal theories that require proof of discriminatory intent. Iqbal, 129 S.Ct. at 1948. In that context, with intention-based constitutional claims in mind, the Supreme Court held that a supervisor's "mere knowledge of his subordinates discriminatory purpose" does not amount to the supervisor's violating the constitution. Id. At 1949. As the Supreme Court explained, however, "the factors necessary to establish a Bivens violation will vary with the constitutional provision at issue." Id.

That holding does not change the law on supervisory liability, particularly where, as here, the underlying constitutional right of the inmate is to be free from the use of excessive force by his jailers. In such cases, the traditional Colon categories of supervisory liability still apply. See Jackson v. Goord, 644 F.Supp. 2d 307, 324 & n.7 (S.D.N.Y. 2009) (holding Colon standard is unaffected by Iqbal in deliberate indifference case, because Iqbal "involved discriminatory intent."). Indeed,

following Iqbal, courts in the Second Circuit have routinely continued to cite all five of the Colon categories as the bases for establishing supervisory liability in cases alleging violations of a plaintiff's Fourth and Eighth Amendment rights. See, e.g., Id.; Gordon v. City of New York, 09-CV-3908 (CBA), 2009 WL 3878241, at *2 (E.D.N.Y. Nov. 18, 2009); Dowdy v. Hercules, 07-CV-5488 (ENV), 2010 WL 169624, at *3, *6 (E.D.N.Y. Jan. 15, 2010); Garcia v. Watts, 08-CV-7778 (JSR), 2009 WL 2777085, at *12-19 (S.D.N.Y. Sept. 1, 2009); Swain v. Doe, 04-CV-1020 (SRU), 2009 WL 3151183, at *5 (D. Conn. Sept. 24, 2009).[5]

The cases of Bellamy v. Mount Vernon Hospital, 07-CV-1801 (SAS), 2009 WL 1835939 (S.D.N.Y. June 26, 2009), Joseph v. Fischer, 08-CV-2824 (PKC), 2009 U.S. Dist. LEXIS 96952 (S.D.N.Y. Oct. 8, 2009) and Newton v. City of New York, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009), which Defendants cite, are not binding on this Court and overlook the specific role that discriminatory intent played in Iqbal. In fact, subsequent decisions have explicitly called Bellamy, Joseph, and Newton into doubt, noting that those rulings "may overstate Iqbal's impact on supervisory liability" and holding that "[w]here the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference to standards of the Fourth and Eighth

---

[5] Accord Choi v. Ballista, 630 F. Supp. 2d 170, 178 n.2 (D. Mass. 2009) (noting that the "state of mind required to make out a supervisory claim under the Eighth Amendment … requires less than the discriminatory purpose or intent that Iqbal was required to allege in his suit …").

Amendments, the personal involvement analysis set forth in Colon v. Coughlin may still apply." See Sash v. United States, 674 F.Supp.2d 531, 544, 2009 WL 4824669, *10 (S.D.N.Y. 2009); D'Olimpio v. Crisafi, 718 F.Supp.2d 340, 347, 2010 WL 2428128, at *4-*5 (S.D.N.Y. 2010); Qasem v. Toro, 09-CV-8361 (SHS), 2010 WL 3156031, *3 (S.D.N.Y. 2010) (declining to adopt the "narrow interpretation of Iqbal" advanced by Bellamy, Joseph and Newton).

Accordingly, Colon remains the standard for establishing personal involvement by supervisory officials under 42 U.S.C. § 1983.

## B.    Plaintiff States a Claim Against the Supervisory Defendants Under Both Colon and Bellamy.

In all events, even assuming that Bellamy was rightly decided, Mr. Plair has adequately stated a claim.  Contrary to Defendants' contention, Bellamy does not hold that the Colon bases for liability have been completely abrogated, but held rather that the first and third Colon categories survive Iqbal.  Bellamy, 2009 WL 1835939, at *6; see also D'Olimpio, 718 F.Supp.2d at 347; Bellezza v. Holland, 09-CV-8434, ___ F.Supp.2d ____, 2010 WL 3000184, at *6 & n.1 (S.D.N.Y. 2010).

Here, the Complaint states a claim under the third Colon category; each of the supervisors is alleged to have received extensive information concerning the City's pattern of incidents involving unnecessary and excessive force to inmates and the failure of the DOC to prohibit its staff from using such force, and have failed to take any steps to curb those unconstitutional abuses.  Stavridis Decl., Exh. A, ¶¶ 11-

15.  They are alleged to have allowed the continuation of a policy or custom under which the unconstitutional practice of using excessive force against inmates incarcerated in the City's jails has occurred.  See, e.g., Jean-Lauren v. Wilkerson, 438 F. Supp. 2d 318 (S.D.N.Y. 2006) (denying motion to dismiss, holding that complaint's allegation that Commissioner Martin Horn authorized correction officers to maintain a custom or practice that authorized the use of physical force against inmates "clearly falls into the third Colon category"); see also Locicero v. O'Connell, 419 F.Supp.2d 521 (S.D.N.Y. 2006).

Thus, Plaintiff states a claim against the Supervisory Defendants and Defendants' motion to dismiss the claims against them should be denied.

## C.  Discovery May Reveal Direct Personal Involvement by the Supervisory Defendants.

Mr. Plair alleges that he was locked in a cell in the intake area of RNDC for nineteen hours with a set of severe facial fractures asking for help from every DOC staff member he saw, including at least eight individuals.  Stavridis Decl., Exh. A, ¶¶ 41-46.  The nineteen-hour period began at approximately 8:30 p.m. and ended at approximately 3:30 p.m. the following day.  Stavridis Decl., Exh. A, ¶¶ 18, 47.  It is reasonable to assume that DOC staff would change tours at least twice during this period.  Accordingly, Plaintiff's pleas for help likely fell upon the ears of three different shifts of DOC staff members in the RNDC intake area.  It is a more than plausible notion that the facility's Warden, its Supervising Warden, DOC's Chief of

Department, Deputy Commissioner and/or Commissioner may have received information during that time indicating the nature of plaintiff's injury and his status in the intake cell.  If this is the case and they failed to take action, these Defendants could be liable on both a personal Iqbal and a Colon supervisory basis.  Iqbal, 129 S.Ct. at 1949; Revere, 463 U.S. at 244-45; see also Hickey v. City of New York, 01-CV-6506 (GEL), 2004 U.S. Dist. LEXIS 23941, *52-53 (S.D.N.Y. Nov. 29, 2004).  Only discovery will reveal the information available to these Defendants as Plaintiff sat in the cell.[6]

Accordingly, the Supervisory Defendants' motion to dismiss the complaint for failure to state a claim against them should be denied.

## POINT III

### PLAINTIFF'S STATE LAW CLAIMS ARE VIABLE AND THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THEM

In the Complaint, Plaintiff alleges, pursuant to New York State law, claims of (1) Assault and Battery; (2) False Imprisonment; (3) Intentional Infliction of

---

[6] Defendants argue in their moving papers that Plaintiff's claims against the Supervisory Defendants should be dismissed on the pleadings in part because "there are no allegations or facts [in the Complaint] indicating that the captain [who punched Plaintiff] engaged in similar behavior on previous occasions." Defs. Br., p. 9.  It is unclear how Defendants expect Plaintiff to provide evidence of the prior misconduct of an unidentified individual, especially where, as here, Defendants have refused to identify him. See FED. R. CIV. P. 11(b)(3).  In any event, Plaintiff intends to explore the prior misconduct of the Defendants during discovery, and agrees with Defendants that evidence of prior misconduct by them will support his claims against the municipality and its supervising officials. See, e.g., Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995).

Emotional Distress; (4) Negligent Infliction of Emotional Distress; and (5) Negligent

Hiring, Training and Retention of Employment Services.  Plaintiff states a claim as to

each.

## A.    Section 24 of the New York Correctional Law Does Not Bar Plaintiff's Claims.

"It is well settled that Section 24 shields employees of a *state* correctional

facility from being called upon to personally answer a state law claim for damages

based on activities that fall within the scope of the statute."  Ierardi v. Sisco, 119 F.3d

183, 186 (2d Cir. 1997) (emphasis added); see also Joy v. New York, 09-CV-841 (FJS),

2010 WL 3909694, *4 (N.D.N.Y. Sept. 30, 2010).[7]  However, at least one court in this

district has held that § 24 does not apply to the City's correctional employees.  See

Martinez v. Robinson, 99-CV-11911 (DAB), 2001 WL 498407, *4 (S.D.N.Y. May 10,

2001) ("Thus, the text of Section 24, especially when read together with other relevant

statutes, indicates that it does not shield employees of the New York City Department

of Correction from liability.").

In any event, Plaintiff's state law claims assert liability against the City of

New York for the tortious conduct of the individual Defendants on a respondeat

superior basis.  Stavridis Decl., Exh. A, ¶¶ 73, 78, 83, 88, 91-95.  As such, any

---

[7] In 2009, the Supreme Court held Section 24 of the New York Correctional Law to be an unconstitutional violation of the supremacy clause as it required claims pursuant to 42 U.S.C. § 1983 to be brought in the New York Court of Claims.  Haywood v. Drown, 129 S.Ct. 2108, 2117 (2009).  However, the Supreme Court's holding in Haywood does not "affect the question of the district court's jurisdiction to hear pendent state-law claims against [prison] officials."  Joy, 2010 WL 3909694, at *4.

immunity from suit conferred upon the individual Defendants is of no moment and amounts to a mere semantic technicality as Section 24 does not impact suits against the Defendants' employer, the City of New York, for their conduct.  <u>See</u> N.Y. CORRECT. LAW § 24 (McKinney 2010).

## B.   Eleventh Amendment Immunity is Inapplicable to Municipal Officials.

Defendants' assertion of Eleventh Amendment immunity as a bar to Plaintiff's state law claims against them is deeply flawed. <u>See</u> Defs. Br., p. 10. "While states are protected by the Eleventh Amendment from suits brought by a private party, municipalities are not." <u>Sorrentino v. Outhouse</u>, 03-CV-104 (TJM), 2006 WL 2052307, *8 (N.D.N.Y. July 21, 2006) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 70 (1989)).   Therefore, Defendants' inaccurate claim that the Eleventh Amendment shields them from liability should be rejected by the Court.

## C.   Plaintiff's Negligent Hiring, Training and Retention Claim Should Not Be Dismissed.

Defendants seek dismissal of Plaintiff's claim against the City for its negligent hiring, training and retention of the individual Defendants on the grounds that such a claim is barred where the challenged action occurred within the scope of employment.[8]  Defs. Br., p. 12.  Plaintiff concedes that the City cannot be liable for the negligent hiring, training and retention of the Supervisory Defendants if the City

---

[8] Defendants also argue for dismissal of Plaintiff's claim for negligent supervision, citing <u>Saghezi v. Reno</u>, 94-CV-8291 (HB), 1996 U.S. Dist. LEXIS 13447, at *24-25 (S.D.N.Y. Sept. 12, 1996).  Defs. Br., p. 12.  However, Plaintiff does not assert a negligent supervision claim in the Complaint. Stavridis Decl., Exh. A, <u>generally</u>.  Accordingly, Defendants' arguments for dismissal of such claim are not addressed herein.

agrees that their actions were undertaken in the scope of their employment.  See Kramer v. City of New York, 04-CV-106 (HB), 2004 WL 2429811, *12 (S.D.N.Y. Nov. 1, 2004).  However, Plaintiff's claim should nonetheless survive the instant motion for dismissal.

The New York City Law Department only represents the City and the Supervisory Defendants at this time.  See Defs. Br., p. 1, n.1.  Yet the language in Defendants' memorandum appears to suggest that a determination has been made that *all* of the individual Defendants, including Perez and the John Doe Defendants, were acting within the scope of their employment.  See Defs. Br., p. 12. ("There is no dispute here that the defendants were acting within the scope of their employment."). It is legally impossible for such a determination to have been made as to Perez and the John Doe Defendants at this time.

Pursuant to New York General Municipal Law § 50-k, a determination by the New York City Corporation Counsel as to whether an employee was acting within the scope of his or her employment occurs only after the employee delivers the complaint to the New York City Law Department.  See N.Y. GEN. MUN. LAW § 50-k(2) (McKinney 2010).  As plaintiff lacks sufficient identifying information to serve Perez or to identify the John Does, they have not been served and the New York City Corporation Counsel has not yet made his determination.  Thus, it is entirely possible that the City may determine that some or all of these Defendants were acting outside of the scope of their employment at the time of Mr. Plair's assault, creating an issue of

fact "appropriate for a jury." <u>Rowley v. City of New York</u>, 00-CV-1793 (DAB), 2005 WL 2429514, *13 (S.D.N.Y. Sept. 30, 2005); <u>see also</u> <u>Spitz v. Coughlin</u>, 161 A.D.2d 1088, 557 N.Y.S.2d 647, 648 (N.Y.App.Div.1990) (finding intentional misconduct by correction officer to be outside scope of employment).  Accordingly, Plaintiff's claim against Defendant City for negligent hiring, training and retention should not be dismissed.

**D.    The Court Should Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims.**

Defendants ask that the Court decline to exercise supplemental jurisdiction over such state law claims as may remain after the Court decides the instant motion, offering no rationale for their request.  Defs. Br. at 12-13.  There is no basis for the Court to decline supplemental jurisdiction in this case.

Pursuant to 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over a state law claim "if it and the federal claim 'derive from a common nucleus of operative fact.'" <u>Prince v. Cablevision Systems Corp.</u>, 04-CV-8151 (RWS), 2005 WL 1060373, *13 (S.D.N.Y. May 6, 2005) (internal citations omitted).  Here, Plaintiff's state law claims each share a common nucleus of operative fact with the federal claims: the assault and denial of medical treatment to Plaintiff.

A district court may decline to exercise supplemental jurisdiction over a state law claim when "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district

court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In this case, none of these factors favor declining supplemental jurisdiction.

First, the state law issues raised by plaintiff are neither novel nor complex; they involve straightforward assault and battery, false imprisonment negligent and intentional infliction of emotional distress and municipal negligence. Second, these state claims do not predominate over plaintiff's federal constitutional claims. Third, federal claims will remain after the instant motion is decided as Defendants have not moved to dismiss Plaintiff's federal claims of excessive force, deliberate indifference to serious medical needs or unlawful seizure and detention. Finally, Defendants have not offered any compelling reason for the Court to decline supplemental jurisdiction and Plaintiff respectfully submits that no such reason exists.[9]

Accordingly, the Court should exercise supplemental jurisdiction over Plaintiff's state law claims. See Akwesi v. Uptown Lube & C/W, Inc., 07-CV-335 (NRB), 2007 WL 4326732, *5 (S.D.N.Y. Dec. 3, 2007) ("Since defendant has been unsuccessful in dismissing the plaintiff's federal claim at this time, and since all the claims arise from the same nucleus of events, the exercise of supplemental jurisdiction at this stage is entirely appropriate.") (internal citation ommitted).

---

[9] The case that Defendants cite in support of their bare request, Pitchell v. Callen, 13 F.3d 545 (2d Cir. 1994) is inapposite, as Defendants have not even moved for dismissal of several of Plaintiff's federal claims.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
       January 12, 2011

HARVIS & SALEEM LLP
*Attorneys for Plaintiff Yashua Plair*
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880

By: _____
       Gabriel P. Harvis